**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ROB TINSLEY PROPERTIES, LLC,

      Plaintiff,

      v.

DAYLIGHT PETROLEUM, LLC,

      Defendant/Third-Party Plaintiff,

      v.

RONALD L. JOHNSON,

      Third-Party Defendant.

Case No. 25-4072-JAR-JBW

## MEMORANDUM AND ORDER

Plaintiff Rob Tinsley Properties, LLC ("Tinsley") filed this removal action against Defendant Daylight Petroleum, LLC ("Daylight"), alleging Kansas law tort claims arising out of Daylight's fracking operation, which Tinsley alleges forced oil through an unplugged abandoned well under Tinsley's commercial building. On August 18, 2025, Daylight filed a Third-Party Petition against Ronald Johnson, the predecessor in interest to Tinsley's property.[1] Johnson has not filed an Answer to the Third-Party Complaint. Now before the Court is Tinsley's Motion to Strike Defendant's Third-Party Petition (Doc. 17) and Daylight's Motion for Default Judgment Against Third Party Defendant (Doc. 16). The motions are fully briefed and the Court is prepared to rule. For the reasons stated below, the Court grants Tinsley's motion to strike and therefore finds moot Daylight's motion for default judgment.

---

[1] Doc. 8.

I.     **Background**

The following facts are alleged in the Petition and Third-Party Complaint, and assumed to be true for purposes of deciding the instant motions.  Tinsley owns a commercial building located in Neodesha, Kansas ("Tinsley's Property"), where it conducts various activities including operation of a concrete business.  Daylight is a private oil and gas company that operates thousands of oil and gas wells across Oklahoma, Texas, Kansas, Louisiana, and Mississippi, including but not limited to wells located on the property adjacent to Tinsley's Property.  Third-Party Defendant Ronald Johnson owned Tinsley's Property prior to August 2018, and was responsible for the operation, care, and control of various oil and gas wells situated on Tinsley's Property when he owned it.  Johnson constructed the commercial building that is now on the property.

On June 26, 2023, in connection with a fracking operation, Daylight injected a well located on the property adjacent to Tinsley's Property (the "Well") by forcing saltwater or brine into underground formations at significant pressures.  The purpose of the fracking operation was to recover residual oil by injecting fluids into oil-bearing formations.  In a typical configuration, a single injection well is surrounded by multiple production wells that bring oil and gas to the surface.

Before fracking, operators like Daylight are required to make an application with the Kansas Corporation Commission ("KCC") in which they are required to, among other things, "provide a plat showing the location of all oil and gas wells, including . . . abandoned wells . . . within a ½ mile radius of the proposed injection well. . . ."[2]  Operators are also required to provide information showing that the injection into the proposed zone will be contained within

---

[2] K.A.R. § 82-3-401(a)(2).

the zone and will not initiate fractures through the overlying strata that could enable the fluid or formation fluid to enter fresh and usable water strata.  Tinsley's Property is located within a one-half mile radius of the Well that Daylight intended to use for its injection site.

Unbeknownst to Tinsley, there was an abandoned well located underneath the floor of its building.  Consequently, during Daylight's injection operations, oil was forced throughout the inside of Tinsley's building, causing substantial damage to Tinsley's property and interruption of business operations, among other things.  Its experts opine that Tinsley has been or will be damaged in an amount in excess of $1 million once all corrective action is taken.  The parties anticipate that a significant portion of the concrete drive and foundation or floor will have to be removed and excavated for purposes of locating and plugging the abandoned well or otherwise remediating the discharge resulting from Daylight's operations.  Tinsley alleges that the concrete floor and foundation cannot be repaired in a workmanlike manner given, among other things, the inability to properly compact the soil where the repair would be made.  Daylight has not offered Tinsley any compensation for the damage.

In 2024, Daylight filed a Petition with the Kansas Corporation Commission ("KCC"), in order to determine its obligations in remedying the situation.  According to Tinsley, although KCC determined that Daylight is responsible for the discharge at issue and is responsible for taking corrective measures to locate and plug the abandoned well, it has not issued an order requiring Daylight to compensate Tinsley, and considers liability outside its purview.

Plaintiff alleges four claims for relief against Daylight: (1) absolute liability under K.S.A. § 65-6203, based on the KCC's determination that Daylight is responsible for the discharge and correcting it; (2) negligence per se based on a violation of K.A.R. 82-3-401(a)(2); (3) negligence for breaching its duty of reasonable care to Tinsley; (3) trespass/nuisance for unreasonably

interfering with Tinsley's use, benefit, and enjoyment of the property; and (4) ultrahazardous activity.

Daylight filed a Third-Party Complaint under Fed. R. Civ. P. 14(a) against Johnson. Daylight alleges that if the Court determines that an abandoned well underneath Tinsley's Property caused Tinsley's damages, then Johnson is liable to Daylight because he failed to properly document and cap the abandoned well when he was the owner of the property and built the commercial building on the land. Daylight alleges the following claims for relief: (1) negligence per se on the basis of K.S.A. § 55-156, which "requires the operator of any well to plug said well in accordance with the rules and regulations of the [KCC] prior to abandoning said well,"[3] (2) negligence for breaching his duty to future landowners, "operators of the Tinsley's Property and all nearby properties (including Daylight) to properly plug all abandoned wells located on the Tinsley's Property before abandoning the same"[4]; (3) nuisance based on his interference with the use and enjoyment of Daylight's property; and (4) reimbursement under K.S.A. § 55-180 for its costs incurred in searching for abandoned wells on Tinsley's Property, plugging them, and for any further costs and expenditures incurred in addressing the issue.

## II.    Standard

Under Fed. R. Civ. P. 14(a), "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." And under Rule 14(a)(3), the third-party plaintiff may assert "any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claims against the third-party plaintiff." Under Rule 14(a)(4), "[a]ny party may move to strike the third-party

---

[3] Doc. 8 ¶ 19.

[4] *Id.* ¶ 27.

claim, to sever it, or to try it separately."  Here, Tinsley moves to strike the third-party claims asserted against Johnson.

### III.     Discussion

#### A.       Timeliness

The Court first addresses Daylight's argument that Tinsley's motion to strike is untimely. According to Daylight, Fed. R. Civ. P. 12(f) required Tinsley to file any motion to strike the Third-Party Complaint within 21 days of service.  Because the motion to strike was filed on January 7, 2026, several months after the Third-Party Complaint was served, Daylight contends that it is untimely.

Rule 14(a)(4) does not provide a time limit for filing a motion to strike, and the Tenth Circuit has provided no guidance on whether the time limit for motions to strike set forth in Rule 12(f) applies to motions to strike third-party claims governed by Rule 14(a).[5]  Thus, the Court declines to find that the motion to strike is untimely, particularly given that Johnson has not appeared, and there is a question about whether he was properly served.

#### B.       Merits

Rule 14 is typically used in two situations: "(1) where a tortfeasor is seeking contribution from a joint tortfeasor, and (2) where an insured is pursuing indemnification."[6]  The third-party plaintiff's "claim cannot simply be a related claim or one arising against the same general

---

[5] *See* 6 Wright & Miller's Federal Practice & Procedure § 1460 (3d ed.) ("Rule 14 also is silent as to the time for filing a motion to strike or vacate. As a matter of sound practice, a challenge to the impleader should be made as promptly as possible—typically prior to filing a third-party answer—in order to get the most favorable exercise of judicial discretion."); *Country Mut. Ins. v. Rocky Mountain Constr. Co.*, No. 12-CV-00453-REB-KMT, 2013 WL 438940, at *2 (D. Colo. Feb. 5, 2013) (noting lack of authority in Tenth Circuit on timeliness issue).

[6] *Adm. Comm. of Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 216 F.R.D. 511, 513 (D. Kan. 2003).

background, but must be based on the [plaintiff's] claim of liability against him."[7]  "Indeed, the provision for impleading parties under Rule 14(a) is narrow as the third-party claim must be derivative of the original claim."[8]  "[I]mpleader is proper only if the party has a right to relief under the governing substantive law."[9]  The burden of showing that impleader is appropriate rests on the third-party plaintiff.[10]

Tinsley asks the Court to strike the Third-Party Complaint because it does not allege derivative liability under Kansas law.  Daylight is not an insured pursing indemnification.  Instead, Daylight attempts to bring Johnson into the lawsuit as a joint tortfeasor.  It asserts claims against Johnson under Kansas law for negligence, negligence per se, nuisance, and reimbursement under K.S.A. § 55-180.  Daylight asserts that if it is found liable for causing Tinsley's property damage through an abandoned well under the property, then Johnson is liable to it for abandoning the well under Tinsley's property without plugging it first.

But, as Tinsley points out, under Kansas law, the doctrine of contribution was abolished when comparative fault was adopted, therefore no cause of action for contribution arises under Kansas law.[11]  Likewise, "to the extent [Daylight] is arguing it is entitled to indemnification due to any imbalance in the parties' proportionate fault, such a claim is contrary to Kansas law."[12]

---

[7] *Id.* (citing *Bethany Med. Ctr. v. Harder*, 641 F. Supp. 214, 217 (D. Kan. 1986)).

[8] *KMMentor, L.L.C. v. Knowledge Mgmt. Pro. Soc., Inc.*, No. CIVA 06-2381-KHV, 2006 WL 3759576, at *2 (D. Kan. Dec. 19, 2006) (citing *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158 n.1 (10th Cir. 1990)).

[9] *Clark v. Assocs. Comm. Corp.*, 149 F.R.D. 629, 633 (D. Kan. 1993) (first citing *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir. 1983); and then citing *In re Dep't of Energy Stripper Well Exemption Litig.*, 752 F. Supp. 1534, 1536 (D. Kan. 1990)).

[10] *Willard*, 216 F.R.D. at 513.

[11] *See, e.g.*, *Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1266 (D. Kan. 2002) (citing *Wilson v. Probst*, 581 P.2d 380, 384 (Kan. 1978)); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir. 1983).

[12] *Nolde*, 202 F. Supp. 2d at 1266–67 (footnote omitted).

Instead "[w]hen the comparative negligence of the parties is an issue and recovery is permitted against more than one party, each party is liable for that portion of the total dollar amount awarded as damages to a claimant in the proportion that the amount of that party's causal negligence bears to the amount of the causal negligence attributed to all parties against whom recovery is permitted."[13]  Under Kansas law, "impleader is not required to assert that a third party is at fault for a plaintiff's alleged damages; courts instead protect defendants' rights by applying 'the "phantom party" concept, whereby the proportionate fault of tortfeasors who cannot be made parties to the suit is nevertheless determined.'"[14]

Here, Daylight's claims are based on the argument that it was Johnson's negligence—his failure to locate and plug the wells before he sold the property—that caused Plaintiff's damages and not Daylight's fracking.  Despite some of the language in the pleading, Daylight's claims are not based on a separate duty that Johnson owes Daylight.  The claims are based on his breach of duty to Tinsley, which led to its property damage.  Thus, Daylight has not met its burden of showing that its third-party claims are premised on derivative liability.  Under Kansas law, Daylight will not be held liable for the alleged negligence of Johnson that caused Tinsley's injuries.  But Rule 14 is not available for the joinder of joint tortfeasors.[15]

---

[13] K.S.A. § 60-258a; *see Baird v. Phillips Petroleum Co.*, 535 F. Supp. 1371, 1378 (D. Kan. 1982) ("Under § 60-258a, the negligence of all tortfeasors may be compared even if all tortfeasors are not made parties to the lawsuit.").

[14] *Hartford Fire Ins. v. Forward Sci. LLC*, No. 20-2399-HLT-ADM, 2021 WL 26176, at *3 (D. Kan. Jan. 4, 2021) (quoting *Hefley*, 713 F.2d at 1496).

[15] *White Prompt, Inc. v. David A. Kraft & Assocs., LLC*, No. 20-4030-EFM, 2020 WL 6343305, at *2 (D. Kan. Oct. 29, 2020).

### C.    Motion for Default Judgment

Daylight moves for default judgment against Johnson because it maintains he was timely served with the Third-Party Complaint but failed to plead or otherwise defend.  Because the Court grants Plaintiff's motion to strike, this motion is moot.[16]

**IT IS THEREFORE ORDERED BY THE COURT** that Tinsley's Motion to Strike Defendant's Third-Party Petition (Doc. 17) is **granted**.  The Third-Party Complaint is hereby dismissed.

**IT IS FURTHER ORDERED** that Daylight's Motion for Default Judgment Against Third Party Defendant (Doc. 16) is **moot**.

**IT IS SO ORDERED.**

Dated: April 2, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[16] Even if the Court denied the motion to strike, it would deny the motion for default judgment on two grounds: (1) Daylight skipped the first step of the process by failing to seek a clerk's entry of default under Rule 55(a); and (2) there is a dispute in the record about whether Johnson was properly served with the Third-Party Complaint.  *Compare* Brock Aff. (Doc. 21), *with* Tinsley Decl. (Doc. 22-1).